**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0140n.06**
**Filed: February 23, 2005**

**No. 02-6435**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GARY DEWAYNE ROSS, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MERRITT, DAUGHTREY, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Gary Ross pleaded guilty to five drug trafficking offenses and now challenges the sentences he received under the Federal Sentencing Guidelines. Most notably, he argues that his possession of a firearm during one distribution offense was not relevant conduct sufficient to foreclose the reduction of his sentence, by way of a safety-valve provision, *see* U.S.S.G. § 5C1.2(a), from the statutory minimum to one within a lower Guideline range. Because Ross argues that *United States v. Booker*, 125 S. Ct. 738 (2005), entitles him to resentencing and because the government agrees—waiving its right to argue plain error—we vacate his sentence and remand for resentencing.

On April 6, 2001, police officers from Jackson, Tennessee, having learned that Gary Ross planned to bring drugs to a local hotel, met Ross at the hotel, arrested him and searched his car. The search revealed a semiautomatic pistol and a variety of drugs: 28.1 grams of cocaine, 5 grams of cocaine base (also known as crack cocaine), 14 dosage units of morphine and 40 dosage units of dihydrocodeinone (an opiate). Ross later admitted that he intended to trade the drugs for sex with a woman at the hotel. The Jackson police did not charge Ross and released him from custody.

On May 7, 2001, Ross again drew the attention of law enforcement, this time in Milan, Tennessee, which is twenty-five miles from Jackson. On that occasion, undercover agent Lee Dearmitt of the Tennessee Bureau of Investigation observed Ross supply 1.1 grams of crack cocaine to John McDougle, who in turn sold it to Dearmitt. Continuing his undercover investigation, Dearmitt purchased drugs from McDougle on May 17, 2001, this time buying 22.6 grams of cocaine, and again noticed that Ross acted as McDougle's supplier. And on May 24, 2001, Dearmitt bought 46.6 grams of cocaine from McDougle, cocaine that Ross also supplied.

In June of that year, Dearmitt again attempted to buy crack and powder cocaine from McDougle, but the deal fell through when McDougle could not produce the drugs. Trying to keep his customer, McDougle contacted Dearmitt in July and again in late August with the promise that he had a new supplier. Hoping to identify the new supplier before concluding his investigation, Dearmitt agreed to another purchase and specified that he wanted to buy crack cocaine, not powder. On August 29, when Dearmitt arrived at an agreed-upon meeting place (a house in Martin, Tennessee) to consummate the sale, he learned that McDougle did not have a new supplier; instead,

Ross was there, cooking powder cocaine into the crack form of the drug. Dearmitt eventually bought 55.3 grams of crack from McDougle.

As a result of these events, Ross was indicted along with McDougle and Daneen Windom in a ten-count indictment. Count one applied only to McDougle. Counts two through six all charged offenses committed on April 6, with two through five addressing possession with the intent to distribute the four drugs (cocaine, crack cocaine, morphine and dihydrocodeinone) and with count six charging Ross with possession of a firearm in furtherance of a drug-trafficking crime. Counts seven through ten dealt with the four subsequent trafficking offenses: distributing 1.1 grams of crack cocaine on May 7, 22.6 grams of cocaine on May 17, 46.6 grams of cocaine on May 24, and 55.3 grams of crack cocaine on August 29.

Ross pleaded guilty to each count against him. At the sentencing hearing, though, he argued that the police engaged in sentencing entrapment by delaying the charges against him, proceeding to buy more drugs from him and effectively increasing his potential sentence. The district court did not agree, then proceeded to apply the Sentencing Guidelines to Ross's offenses. In doing so, the court grouped the drug offenses together and determined that the Guidelines prescribed a sentencing range of 87 to 108 months for the drug offenses. Count ten (concerning the August 29 sale of 55.3 grams of crack), however, carried a statutory mandatory-minimum sentence of 10 years. In view of this statutory minimum, the district court sentenced Ross to 120 months on count ten as well as on each of the other seven drug counts, all to be served concurrently. In the process, the district court decided that the "safety valve" provision of § 5C1.2(a) of the Guidelines could not be applied

to reduce the statutory minimum on count ten to the otherwise-applicable Guidelines range because Ross's possession of a firearm on April 6 violated the criterion set out in § 5C1.2(a)(2). The court also sentenced Ross to an additional 60 months on the firearm-possession count, to be served consecutively with the other sentences, and to 5 years of supervised release. On appeal, Ross challenges his sentences, which in combination amount to 180 months in prison and 5 years of supervised release.

Ross argues that his possession of a firearm during the April 6 drug transaction does not qualify as relevant conduct under the Guidelines with respect to the August 29 drug sale. If, as Ross argues, the April 6 transaction is not connected to the August 29 sale, then § 5C1.2(a) of the Guidelines would reduce his drug-count sentence (under count 10) from 120 months to a sentence between 87 and 108 months. After the Supreme Court's recent decision in *United States v. Booker*, we invited Ross and the United States Attorney's Office for the Western District of Tennessee to supply letter briefs explaining what impact (if any) *Booker* had on this case. In response, Ross asserted for the first time that the district court's finding of relevant conduct constituted a Sixth Amendment violation, for it led to an increase in his sentence without a finding by the jury, and that the case should be remanded for resentencing. Waiving its right to argue that Ross failed to satisfy the components of plain-error review, the Government filed the following three-sentence letter brief:

> This case involves a Guidelines issue. Specifically, defendant maintains that the District Court erred in finding that defendant did not qualify for the safety value provision under U.S.S.G. § 5C1.2.
>
> Pursuant to *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the case should be remanded for resentencing.

No. 02-6435
*United States v. Ross*

Under these circumstances, we vacate Ross's sentence and remand for resentencing.